IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


ANTONIO FREEMAN                    )
                                   )
        v.                         )        NO. 3:10-0697
                                   )
SONYA TROUTT, et al.               )


TO:    Honorable Aleta Trauger,  District Judge


**R E P O R T   A N D   R E C O M M E N D A T I O N**

By Order entered November 9, 2010 (Docket Entry No. 43), the Court referred this action

to the Magistrate Judge to enter a scheduling order, to dispose or recommend disposition of any

pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if

necessary, under Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pursuant to the Orders entered December 2, 2011 (Docket Entry No. 152), and December 7,

2011 (Docket Entry No. 159), an evidentiary hearing was held before the undersigned on June 13,

2012.  Set out below are the Court's findings of fact and recommendation for disposition of the

action.


## I. FACTUAL AND PROCEDURAL BACKGROUND

The action was filed pro se and in forma pauperis by three individuals – Antonio Freeman,

Gordon Storke, and Recco Van – who were inmates at the Sumner County Jail ("Jail") at the time

the lawsuit was filed on July 21, 2010. Plaintiffs Storke and Van were dismissed from the action during pre-trial proceedings because of their failure to comply with orders of the Court and for want of prosecution.[1] Plaintiff Freeman ("the plaintiff") is currently incarcerated within the Tennessee Department of Correction ("TDOC").

In the original complaint (Docket Entry No. 1), the plaintiff named former Sumner County Sheriff Bob Barker and Jail Administrator Sonya Troutt as defendants to claims of civil rights violations and negligence based on allegations that, on July 8, 2010, the plaintiff, Storke, and Van were attacked by several other inmates at the Jail and suffered injuries as a result of the attack. The plaintiff alleges that he was hit with a broomstick and that several items were dropped on his head during the attack. See Docket Entry No. 1, at 5. Although specific claims are not clearly set out in the complaint, the plaintiff refers to the following wrongdoings:

1.  officers at the Jail did not promptly respond to intervene and stop the attack;

2.  he received delayed and insufficient medical attention after the fight;

3.  an unprofessional and racially discriminatory investigation was conducted in the aftermath of the fight;

4.  he was placed in segregation after the fight yet his attackers were not punished and were allowed to stay in their housing units;

5.  for a time period of 42-46 hours after the fight, he was not allowed out of his cell to shower or clean his wounds;

6.  security measures at the Jail were insufficient and led to the attack, including inadequate monitoring of the camera system, housing convicted felons and state prisoners with other inmates, allowing dangerous inmates to remain in the general population, and not having enough security checks at the Jail; and

---

[1] See Orders entered September 28, 2010 (Docket Entry No. 21), and April 27, 2011 (Docket Entry No. 104).

7.    some of the plaintiff's personal property was lost or destroyed after the incident.

See Docket Entry No. 1, at 3-5.

The plaintiff subsequently filed a first amended complaint (Docket Entry No. 29), in which he confirmed that his action was brought under 42 U.S.C. § 1983 for redress of his federal constitutional rights and that he seeks damages, as well as declaratory and injunctive relief.  See Docket Entry No. 29, at 1-2.[2]  The plaintiff also named seven new defendants -- Charles Bandy[3], Alexander Williams, Jeremy Wilkerson, Joey Rush, Kimberly Cherry, Chris Tarlecky, and Lance Hampton – based on their alleged involvement in the events set out in the original complaint and in other events alleged to have occurred at the Jail following the events of July 8, 2010.  The plaintiff alleges that:

1.    Kimberly Cherry failed to properly monitor the video camera system and did not promptly respond to the attack and she was somehow involved in misplacing the plaintiff's property;

2.    Jeremy Wilkerson was involved in misplacing and failing to properly handle the plaintiff's property, resulting in the property being destroyed;

3.    Charles Bandy, Alexander Williams, and Jeremy Wilkerson responded to the attack but failed to intervene to protect the plaintiff;

4.    Chris Tarlecky and Lance Hampton failed to conduct a proper investigation of the incident and subsequently charged the plaintiff with aggravated assault and introduction of contraband into a penal facility.  The plaintiff contends that he was falsely arrested for the aggravated assault charge, which was eventually dismissed on September 27, 2010,  because it was clear that he was a victim in the jailhouse attack and not an aggressor.  He also asserts

---

[2] By Order entered October 13, 2010 (Docket Entry No. 28), the Court granted the plaintiff's motion for leave to file the first amended complaint.

[3] The plaintiff actually named Charles Bandit, but he agreed that the defendant's correct surname is Bandy.

claims for slander, defamation of character, racial profiling, and deliberate indifference based on the actions of these two defendants;

5. Joey Rush and Charles Bandy were involved in a search of the plaintiff's cell on July 9, 2010, in which contraband was discovered in a package of food. The plaintiff alleges that, after the search, Rush tripped him, kneed his neck, banged his head against a cell door, scraped the plaintiff's arms with his fingernails, and sprayed him in the eyes and mouth with mace, and that Bandy twisted his hands, which were in handcuffs at the time;

6. Sonya Troutt treated him unfairly and singled him out for reprisal, wrongfully kept him in segregation without just cause, and improperly permitted the various violations of his constitutional rights.

See Docket Entry No. 29, at 1-8.

By Order entered December 20, 2010 (Docket Entry No. 59), the plaintiff was permitted to amend his complaint a second time to include a claim for mental anguish based on allegations that the defendants failed to properly treat him for exposure to Hepatitis C arising from the fight on July 8, 2010, even though it was known that one of the inmates who attacked the plaintiff, Mike Hutson, had Hepatitis C. See Docket Entry No. 56.[4]

Joint answers were filed by defendants Trout, Bandy, Williams, Wilkinson, Rush, Cherry, Tarlecky, and Hampton. See Docket Entry Nos. 58 and 74. On January 7, 2011, a suggestion of the death (Docket Entry No. 76) of defendant Barker was filed, and current Sumner County Sheriff Sonny Weatherford was substituted for Barker with respect to the official capacity claims brought against defendant Barker. See Order entered March 17, 2011 (Docket Entry No. 78). By Order entered April 27, 2011 (Docket Entry No. 104), the individual capacity claims brought against defendant Barker were dismissed, and by Order entered September 16, 2011 (Docket Entry

---

[4] The Court denied the plaintiff's motion for leave to amend in all other respects. See Docket Entry No. 59, at 2.

4

No. 131), the official capacity claims against Defendant Weatherford were dismissed from the action.

## II. FACTUAL FINDINGS

At the evidentiary hearing, the plaintiff proceeded pro se and testified. Also testifying on behalf of the plaintiff was Jonathan Morris. There were no other witnesses who testified.[5] Based on the testimony presented at the hearing and on the entire record in this action, the Court makes the following factual findings.

On July 8, 2010, the plaintiff was housed in a general population unit at the Jail along with approximately 40 other inmates. Inmates in this housing unit included both pre-trial detainees and inmates who had been convicted of misdemeanors or felonies. On that day an altercation arose in the common area of the housing unit between inmates Gordan Storke and Michael Hutson. These two inmates were part of a group of inmates who had been playing cards and who the plaintiff says had been betting, with a significant number of commissary items as the spoils of the card game. The altercation escalated into a violent fight involving Storke, Hutson, the plaintiff, inmate Recco Van, and other inmates. The plaintiff contends that he was not an aggressor but had to actively fight in order to protect himself and inmate Storke from inmate Hutson and his inmate associates, whom the plaintiff contends used homemade weapons against him and inmates Storke and Van. The plaintiff

_____

[5] At the request of the plaintiff, a witness subpoena was issued for Gordon Storke. See Docket Entry No. 208. However, shortly before the hearing, a Deputy Marshal advised the Court that the Marshal had failed to serve or attempt to serve the subpoena. The Court relayed this information to the plaintiff, and the plaintiff advised that both he and a female friend of his had talked to Mr. Storke about the hearing and that Storke had stated he would be at the hearing. However, Mr. Storke did not appear at the hearing.

was hit with a broomstick during the fight and inmate Hutson went into the plaintiff's cell, which was on the second tier, and dropped a large box containing legal materials and commissary items from the second tier balcony onto the plaintiff, who was on the first floor, striking the plaintiff in the head and neck. The plaintiff testified that the fight lasted approximately 15-17 minutes. The plaintiff testified that the aggressive inmates were white and that he and inmate Recco Van were black. It is unclear from the testimony whether inmate Storke is black or white.

Although the plaintiff testified that inmate Hutson tried to intimidate other inmates and officers at the Jail, the plaintiff did not testify that there was any animosity between him and Hutson or between him and any of the inmates who attacked him during the fight. There was no evidence that the plaintiff or any other inmate had requested protection from other inmates in that housing unit or had made Jail officials aware of a risk of violence because of these inmates. Although the plaintiff testified that the same inmates who attacked him had also attacked other inmates in the housing unit earlier in the day on July 8, 2010, his testimony on this issue was unspecific, and he testified that he did not tell any officer at the Jail about the other attacks.

Jonathan Morris, who is currently an inmate at the Jail and was an inmate at the Jail in the same housing unit as the plaintiff on July 8, 2010, testified regarding his recollection of the fight. Although Morris testified that he stayed out of the fight by staying near his cell, he did witness the events and his testimony was consistent with the events as recounted by the plaintiff, except that Morris testified that the fight was between inmates of equal numbers.

There was no evidence presented that any Jail officers were in the housing unit at the time the fight began. The plaintiff identified Defendant Cherry as the officer at the Jail who was monitoring the Jail's video system at the time, which included a camera in the plaintiff's housing

unit. There was no evidence presented of Cherry's activities on that day, and the plaintiff had no personal knowledge of the actions of Cherry on that day.

The plaintiff testified that other inmates pressed the emergency call button in the housing unit but that no officers arrived until the fight had already been going on for several minutes and that these officers took no action to intervene but instead turned around and left the unit. He identified Defendants Bandy and Williams as being two of the correctional officers who came to the unit and then left without intervening. He testified that more officers eventually returned, entered the unit, and called for the inmates to return to their cells, and that the fight ultimately stopped. The plaintiff testified that as the inmates were returning to their cells, inmate Brown, who he contends had been attacking inmate Recco Van, walked by the plaintiff and that the plaintiff struck Brown because he feared Brown would continue the attack.

The plaintiff testified that he and the other injured inmates were then taken out of the housing unit to be seen by the medical staff. He contended that he had his wounds cleaned, had a bandage applied to a cut near his eye, was given Ibuprofen and ice, and was x-rayed several times, although it is not clear whether the x-rays were taken at or near the time of his initial medical care or the next morning. Although the plaintiff stated that he was cut and bloody as a result of the fight, there was no evidence presented that he suffered any type of serious injury as a result of the fight.

The plaintiff testified that inmate Hutson was infected with the Hepatitis C virus at the time of the fight, a fact the plaintiff explained he learned because he helped Hutson with some legal work concerning Hutson's medical care. The plaintiff stated that he repeatedly requested to be tested for Hepatitis C after the fight but that his requests were denied, causing him to suffer great mental anguish and distress over whether he had become infected with Hepatitis C as a result of possibly

coming into contact with Hutson's blood during the fight. The plaintiff admitted that he was eventually tested for the virus in December 2010, and that the result of the test was that he did not have the virus.

The plaintiff testified that he was taken directly from the medical area to a segregation cell in "Tower 3" instead of being returned to the general housing unit. He stated that he was not able to shower for the first 48 hours that he was in the segregation unit and that he remained in segregation until October 13, 2010. He testified that he was given small amounts of his personal property, some of which had been left in his cell unattended and some of which had been thrown over the balcony by inmate Hutson during the fight. He contended that an officer initially brought him a bed roll and some of his legal materials and that he was subsequently given more legal materials and some food items. However, he testified that a large amount of his personal property was either stolen by other inmates or was lost or destroyed by Defendant Jeremy Wilkerson, who he alleges was the Jail officer who collected his property. He contends that this property was not returned to him despite his complaints to Jail staff and to Defendant Troutt. However, a radio and replacement items were apparently given to the plaintiff to reimburse him for some of the lost personal property, although the plaintiff's testimony on this issue was not entirely clear.

The plaintiff testified that, on July 9, 2010, his segregation cell was searched three times and he was required to submit to a urinalysis. He submitted that one of the searches was conducted by Officers Rush and Bandy and involved a search of packages of Ramen noodles that were part of the property that had been returned to him. The plaintiff contended that Rush asserted that he found contraband consisting of pills inside the package of noodles. The plaintiff testified that he was still emotionally and mentally shaken from the fight the prior day and believed that the he was being "set

up" by the officers and others at the Jail. He testified that he swore, knocked the food package out of the officer's hands, and walked out of the cell, after which Officer Rush grabbed his shirt and tripped his legs causing the plaintiff, who was handcuffed at the time, to fall to the ground. The plaintiff testified that while he was on the ground, Rush "clawed" at the plaintiff's arms with his fingernails ripping away skin from the plaintiff's arm and sprayed a chemical spray into the plaintiff's eyes and mouth. He testified that Officer Bandy twisted his hands and wrists while he was being pinned to the ground by Officer Rush and that this attack continued until other officer arrived and took the plaintiff out of his cell. The plaintiff testified that a "commissary lady" then wiped him off with some Kleenex and other officers placed him in a chair in front of a fan that blew air on him. He testified that a nurse then cleaned his wounds and he was x-rayed but that his requests for an MRI, tetanus shot, and other treatment were denied.

The plaintiff was charged with the criminal offenses of aggravated assault and possession of contraband in a penal facility. He contended that Chris Tarleky and Lance Hampton were responsible for the investigation which resulted in these charges and that they failed to properly investigate the charges. He contended that probable cause did not exist for the aggravated assault charge as evidenced by the fact that this charge was dismissed or withdrawn by the state prosecutor during a court hearing in September, 2010, after the prosecutor reviewed the security tape of the incident and determined that the plaintiff was not the aggressor in the fight but was a victim. The plaintiff was ultimately convicted by a jury of the possession of contraband charge, which is the basis for his current state sentence.

# III. RELEVANT LAW

## A. 42 U.S.C. § 1983

42 U.S.C. § 1983 does not confer rights upon an individual. Instead, it is a vehicle to seek a remedy for violations of constitutional rights guaranteed elsewhere. Graham v. Conner, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A plaintiff proves a claim under Section 1983 by showing that: (1) the defendant was acting under color of state law; and (2) the defendant deprived the plaintiff of rights secured by the United States Constitution or laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

There is no dispute that the plaintiff has satisfied the "under color of state law" requirement. The only question is whether his constitutional rights were violated by the named defendants.


## B. Pre-Trial Detainees

The events at issue occurred while the plaintiff was a pretrial detainee at the Jail. The Fourteenth Amendment protects pretrial detainees from the infliction of punishment at the hands of their captors. See Bell v. Wolfish, 441 U.S. 520, 535-39, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Sixth Circuit Court of Appeals has consistently held that the Eighth Amendment cruel and unusual punishment standards are used to determine whether a pretrial detainee's Fourteenth Amendment rights have been violated with respect to claims that would be viewed as Eighth Amendment claims if brought by a convicted prisoner. Barber v. City of Salem, 953 F.2d 232, 235-37 (6th Cir. 1992); Danese v. Asman, 875 F.2d 1239, 1242-43 (6th Cir. 1989); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985).

# IV. CONCLUSIONS

The purpose of the evidentiary hearing is to inquire into the factual basis of the plaintiff's claims.  Johnson v. Bi-State Justice Ctr., 12 F.3d 133, 135-36 (8th Cir. 1993).  In making this inquiry, the Court has construed the evidence in the light most favorable to the plaintiff, has given the plaintiff the benefit of all reasonable inferences that can be drawn from this evidence, and has not made credibility determinations.

## A. Defendants Rush, Bandy, and Williams

After review of the evidence presented at the hearing and the entire record in the action, the Court finds that genuine issues of material fact exist concerning the plaintiff's excessive force claim against Defendant Rush and Bandy which should be resolved by the jury.  The Constitution prohibits the wanton and unnecessary infliction of pain upon a prison inmate.  Whitley v. Albers, 475 U.S. 312, 319-20, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  Accordingly, the unjustified infliction of bodily harm upon a prisoner gives rise to a claim under 42 U.S.C. § 1983.  Caldwell v. Moore, 968 F.2d 595, 599 (6th Cir. 1992); Franklin v. Aycock, 795 F.2d 1253, 1258 (6th Cir. 1986).  Several factors are relevant in determining whether a particular use of force was objectively reasonable or, instead, was wanton and malicious.  These factors include the extent of injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of the forceful response.  Whitley, 475 U.S. at 321.

Although the plaintiff admitted at the hearing that he was argumentative with Officer Rush on July 9, 2010, and physically disobedient when he knocked the food package out of the officer's

hands and attempted to exit the cell, he further testified that Officer Rush clawed his arm, that Officer Bandy twisted his hands and wrists, and that Officer Rush sprayed him in the mouth and eyes with a chemical spray at close range, and that this force was used against him despite the fact that he was already in handcuffs at the time and was pinned to the ground by the officers. When these facts are viewed in the light most favorable to the plaintiff and, given the absence of any evidence from the defendants regarding the claim, the plaintiff's testimony provides a sufficient basis upon which a reasonable jury could find that Defendants Rush and Bandy's actions were malicious and gratuitous, were not taken in a good faith effort to maintain or restore discipline, and were constitutionally excessive under the circumstances which existed at the time. See Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Whitley, supra; Adams v. Metiva, 31 F.3d 375, 384-86 (6th Cir. 1994) (use of a chemical spray in an unreasonable manner may constitute excessive force).

The plaintiff's claim against Defendants Bandy and Williams for their alleged failure to protect the plaintiff from inmate violence presents a more difficult issue. A violation of the Constitution may occur in some situations when a prison guard fails to protect one inmate from violence at the hands of another inmate. See Farmer v. Brennan, 511 U.S. 825, 842-44, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Walker v. Norris, 917 F.2d 1449, 1453 (6th Cir. 1990). However, not every incident of inmate-on-inmate violence supports a claim of constitutional liability. Farmer, 511 U.S. at 834. For a viable Section 1983 claim, there must be a showing that a substantial risk of serious harm to the plaintiff's safety existed, that the defendant knew of that harm, and that the defendant acted or failed to act in a manner which was deliberately indifferent to this substantial risk. Id. at 834-37.

The plaintiff's evidence fails to show that either Defendant Bandy or Williams were aware that a substantial risk to the safety of the plaintiff existed prior to the fight or of any facts from which they should have inferred that a substantial risk existed. Although the plaintiff offered vague testimony that other fights involving these inmates had occurred in the housing unit earlier that day, he testified that he did not tell anyone about these fights. He further offered no evidence that Defendants Bandy or Williams had any knowledge of these other fights. Additionally, although the plaintiff offered conclusions about what safety precautions generally should have been taken at the Jail to foster inmate safety, he failed to offer any evidence showing that either of these two defendants, or any specific jail employee for that matter, knew of any substantial risk of safety which existed at the Jail because of inmate violence. As such, there is no evidence upon which a reasonable jury could conclude that either Defendant Bandy or Defendant Williams acted with deliberate indifference toward a substantial risk to the safety of the plaintiff from other inmates which existed prior to the fight on July 8, 2010.

However, the plaintiff's failure to protect claim against Defendants Bandy and Williams is also based upon the plaintiff's allegation that they left the housing unit without taking any action to intervene and protect him despite seeing that the plaintiff was being attacked by other inmates. Taking the plaintiff's allegations as true, there is evidence showing that these officers, in observing the fight, had knowledge that the plaintiff was at a substantial risk of serious harm. The question then becomes whether the defendants acted with deliberate indifference to this risk by observing the situation and then leaving without taking any steps to quell the fight or protect the plaintiff. While the exact contours of what action is constitutionally required of a guard who witnesses an on-going fight among inmates is not clearly defined, the Sixth Circuit has held that prison guards have no

13

constitutional duty to intervene in an armed assault by an inmate when the intervention would place the guard in danger of physical harm. Patmon v. Parker, 3 Fed.Appx. 337, 338, 2001 WL 111674, 1 (6th Cir. Jan. 29, 2001). However, constitutional liability can be based upon facts showing that an officer failed to take preventative steps when witnessing an inmate fight. See Walker, 917 F.2d at 1453; Williams v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994); Freeland v. Russell, 2011 WL 901036 (S.D. Ohio Mar. 14, 2011). In the instant action, the only evidence before the Court is that these two defendants were among a group of officers who arrived at the housing unit, witnessed the plaintiff being attacked, and turned and left the unit without taking any action whatsoever in an attempt to intervene or stop the fight. There is no evidence before the Court from the defendants, or otherwise, which provides an explanation for the defendants' actions. Given the paucity of the record before the Court, a genuine issue of material fact exists which must be resolved by the jury on the question of whether Defendants Bandy and Williams responded reasonably to the situation and, thus, are not constitutionally liable even though the plaintiff was harmed in the attack or whether their inaction evidences deliberate indifference. See Farmer, 511 U.S. 844.


B. Defendants Cherry, Wilkerson, Tarlecky, Hampton, and Troutt

The Court finds that the remainder of the plaintiff's claims should be dismissed. The evidence presented by the plaintiff is insufficient to raise genuine issues of material fact regarding his claims against Defendants Cherry, Wilkerson, Tarlecky, Hampton, and Troutt and is so one-sided that no reasonable jury could find in favor of the plaintiff on his claims against these defendants if the claims were heard at trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986).

With respect to Defendant Cherry, the only evidence the plaintiff presented regarding Cherry was that he had been told that she was an officer who monitored the Jail's surveillance system on the day in question. Even taking this fact as true, the plaintiff's belief that Defendant Cherry acted in an unconstitutional manner is based upon pure speculation and is unsupported by any evidence which is before the Court. For any claim brought under 42 U.S.C. § 1983 based upon allegations that a constitutional right was violated, the plaintiff must show a specific basis for personal liability against the defendant sued. See Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984); Dunn v. State of Tennessee, 697 F.2d 121, 128 (6th Cir. 1983). See also Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). There is simply no evidence before the Court supporting a constitutional claim against Defendant Cherry. The plaintiff's assertion that Defendant Cherry was negligent in her duties is likewise based only upon his own speculation. Regardless, even if there were evidence of negligence before the Court, a showing of negligence is not sufficient to sustain a constitutional claim under 42 U.S.C. § 1983. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985). To the extent that the plaintiff alleged in his First Amended Complaint that Defendant Cherry was involved in the destruction of his personal property, he failed at the evidentiary hearing to implicate her in this claim and to explain her involvement in this claim despite being specifically asked by the Court why he was suing Defendant Cherry. Accordingly, all claims against Defendant Cherry should be dismissed as a matter of law.

With respect to Defendant Wilkerson, the plaintiff testified that his claim against Wilkerson is that Wilkerson was the officer who gathered up the plaintiff's personal property which was subsequently destroyed or lost. Although the plaintiff alleged in his first Amended Complaint that

Wilkerson was an officer who responded to the fight on June 8, 2010, but failed to intervene, he did not identify Wilkerson as one of these officers despite being specifically questioned by the Court at the evidentiary hearing about what officers were involved in that claim and about why Defendant Wilkerson was sued in this action. Accordingly, the plaintiff's claim against Defendant Wilkerson for failure to protect should be dismissed as a matter of law.

The plaintiff's claim against Defendant Wilkerson for destruction of his personal property also warrants dismissal as a matter of law. A negligent or unintentional deprivation of property is not actionable under Section 1983. See Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). To the extent that the plaintiff alleges that Wilkerson intentionally deprived him of his property, a plaintiff may not bring a Section 1983 suit on this basis if adequate state remedies exist. See Hudson v. Palmer, 468 U.S. 517, 533-36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extending Parratt v. Taylor, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to intentional property deprivations). The plaintiff has the burden of proving that state remedies for redressing the wrong are inadequate. See Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999). The plaintiff offered no evidence at the hearing which satisfies this burden. Accordingly, the plaintiff's constitutional claim against Defendant Wilkerson for the deprivation of his property should be dismissed as a matter of law.

The plaintiff's claims against Defendants Tarlecky and Hampton are based on their involvement in investigating the events occurring on July 8-9, 2010, and ultimately charging him with the crimes of aggravated assault and possession of contraband in a penal facility. The plaintiff contends that these defendants conducted a discriminatory investigation and that he was charged

with the crime of aggravated assault despite a lack of probable cause and thus falsely arrested.[6]  He

asserts that his false arrest claim is supported by the fact that the charge was subsequently dismissed

by the state prosecutor after the prosecutor reviewed the video tape of the  July 8th fight and

concluded, in the plaintiff's words, that the plaintiff was a victim in the fight.

Based upon the evidence presented at the hearing, the plaintiff's claims against Defendants

Tarlecky and Hampton should be dismissed as a matter of law.  The plaintiff s testimony regarding

these claims was somewhat sparse and he offered no details showing how the investigation

conducted by Tarlecky and Hampton was unconstitutional.  There is no evidentiary basis for a claim

that the defendants acted in violation of the plaintiff's equal protection rights.  Any claim of a

discriminatory investigation is based purely upon the speculation of the plaintiff.  To the extent that

the plaintiff asserts claims of slander, defamation of character, "personal tort," and deliberate

indifference, he has not presented any evidentiary basis which would support plausible claims under

these theories and these claims warrant dismissal.

The plaintiff's false arrest claim based on the aggravated assault charge also warrants

dismissal for several reasons.  Initially, only Defendant Hampton swore to the Affidavit of

Complaint for this charge, and, thus, there is no factual basis for the claim as to Defendant Tarlecky.

Additionally, any false arrest claim based on the aggravated assault charge suffers from two legal

shortcomings.  First, it is undisputed that the plaintiff was already being held at the Jail on other

charges at the time the assault charge was brought against him.  As such, the plaintiff was not

---

[6] Although the plaintiff offered no exhibits at the hearing in support of his false arrest claim, copies of the Affidavit of Complaints for the two charges were included as exhibits to a filing made by the plaintiff on October 13, 2010, and show that Defendant Hampton swore out the affidavit on the aggravated assault charge and Defendant Tarlecky swore out the affidavit on the contraband charge.  See Docket Entry No. 30, at 40-41.

actually arrested and seized as a result of the aggravated assault charge and suffered no deprivation of his liberty which would support a false arrest claim.  See Doe v. Selsky, 2012 WL 125872 (W.D.N.Y. Jan. 17, 2012); Leniart v. Bundy, 2011 WL 4452186 (D. Conn. Sept. 26, 2011); Dillhunt v. Theriault, 2009 WL 4985477 (N.D.N.Y. Dec. 15, 2009); Holmes v. Grant, 2006 WL 851753 (S.D.N.Y. Mar. 31, 2006).  Second, it is undisputed that probable cause existed for the possession of contraband charge which was also lodged against the plaintiff at the same time as the aggravated assault charge.  Within the Sixth Circuit, when a plaintiff is arrested on multiple charges at the same time, he does not have a claim for false arrest if probable cause exists for at least one of the charges on which the plaintiff was arrested.  See Swiecicki v. Delgado, 463 F.3d 489, 498 (6th Cir. 2006), abrogated on other grounds by Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); Lyons v. City of Xenia, 417 F.3d 565, 573 (6th Cir. 2005); Weaver v. Shadoan, 340 F.3d 398, 407 (6th Cir. 2003).

The plaintiff's claims against Sonya Troutt should be dismissed.  For any claim brought against Troutt under Section 1983, the plaintiff must show a specific factual basis for personal liability against Troutt.  See Bellamy, supra; Dunn, supra.  The only personal involvement of Troutt about which the plaintiff testified at the evidentiary hearing was that Troutt was involved in the intentional destruction of his property and in his placement in administrative segregation after the fight.  However, as set out supra at 16-17, the plaintiff does not have a viable constitutional claim based upon the destruction of his personal property at the Jail.

With respect to his claim based on his placement in administrative segregation, this claim has also been raised by the plaintiff in another action against Troutt which is currently filed in this District, Freeman v. Gay, et al., No. 3:11-0867, consolidated with 3:11-1094, (assigned to Judge

Sharp).  By a Report and Recommendation entered June 7, 2012 (Docket Entry No. 120), in that

action, the Magistrate Judge found that the plaintiff's placement in administrative segregation did

not support a constitutional claim and recommended that claim for dismissal.  A plaintiff  has "no

right to maintain two separate actions involving the same subject matter at the same time in the same

court and against the same defendants."  Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir.1977).  See

also Oliney v. Gardner, 771 F.2d 856, 859 (5th Cir. 1985) ; Zerilli v. Evening News Association,

628 F.2d 217, 222 (D.C. Cir. 1980).  Because the plaintiff's administrative segregation claim has

been reviewed in another action that he filed which is currently pending in this District, the Court

should refrain from review of the administrative segregation claim in the instant action.[7]

To the extent that the plaintiff seeks to assert official capacity claims against Troutt, any such

claims are essentially claims against the entity of which she is an officer.  See Kentucky v. Graham,

473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Monell v. New York City Dep't of Soc.

Servs., 436 U.S. 658, 691 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  Accordingly, an official

capacity claim against defendant Troutt as the Jail Administrator is the same as a claim made against

Sumner County.  See Lambert v. Hartman, 517 F.3d 433, 440 (6th Cir.2008), cert. denied 555 U.S.

1126, 129 S.Ct. 905, 173 L.Ed.2d 158 (2009) (civil rights suit against county clerk of courts in his

official capacity was equivalent of suing clerk's employer, the county).  A municipal defendant such

as Sumner County cannot be deemed liable simply because one of its employees committed a

constitutional wrong.  See Monell, 436 U.S. at 691; Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th

---

[7] Generally, the later filed claim or action would be subject to dismissal.  However, because
the plaintiff's administrative segregation claim was reviewed on the merits in the most recently filed
of the plaintiff's two actions, it is appropriate to dismiss the claim in the instant action even though
it was filed first.

Cir. 1994). For Sumner County to be found liable under Section 1983, the plaintiff must set forth facts in his complaint upon which municipal liability can found. This requires a showing that the misconduct complained of came about pursuant to a policy, statement, regulation, decision or custom promulgated by Sumner County. Monell, 436 U.S. at 690-91; Matthews, 35 F.3d at 1049. See also City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Doe v. Claiborne Cnty., Tenn., 103 F.3d 495, 507-09 (6th Cir. 1996).

However, in a Report and Recommendation entered July 7, 2011 (Docket Entry No. 111), the Magistrate Judge addressed a motion to dismiss brought by Sumner County Sheriff Sonny Weatherford, who had been sued in his official capacity, and recommended that the plaintiff's official capacity claims be dismissed from the action. The Magistrate Judge specifically noted that:

> The plaintiff's pleadings simply do not contain any factual allegations supporting a municipal liability claim. Furthermore, despite the shortcomings of the plaintiff's pleadings in this regard being brought to his attention by the defendant through his two motions to dismiss, the plaintiff has not responded to the motions and shown why his official capacity claims should remain in the action.

See Docket Entry No. 111, at 5. The plaintiff did not file objections to the Report and Recommendation and, by Order entered September 16, 2011 (Docket Entry No. 131), the Report and Recommendation was adopted and the plaintiff's official capacity claims against Weatherford were dismissed from the action. Pursuant to the law of the case doctrine, absent exceptional circumstances "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." Westside Mothers v. Olszewski, 454 F.3d 532, 538 (6th Cir. 2006). No exceptional circumstances exist in this case. Because any official capacity claims brought against a Sumner County employee are essentially claims against Sumner County, the dismissal of the plaintiff's official capacity claims against Defendant Weatherford resolves all

official capacity claims brought in this action and requires dismissal of any official capacity claims against Troutt, or any other defendant named in his or her official capacity in this action, as a matter of law.

At the hearing and in his pleadings, the plaintiff also made allegations concerning delayed or denied medical care at the Jail in the aftermath of the fight. However, he offered no testimony that any of the named defendants had any role in denying him medical care. Similarly, he offered no testimony that any of the named defendants had any role in delaying his test for the Hepatitis C virus. Further, the undisputed evidence showed that the plaintiff did not contract the Hepatitis C virus. Insofar as the plaintiff seeks compensatory damages for emotional distress or mental suffering because of his fear that he had contracted Hepatitis C, dismissal of such a claim is appropriate because any action for mental or emotional injury suffered while in custody is barred unless the prisoner can show he suffered a physical injury. <u>See</u> 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury."). There has been no showing of the required physical injury arising from the delayed Hepatitis C test. Accordingly, the plaintiff's inadequate medical care claims warrant dismissal as a matter of law.

## RECOMMENDATION

Based on the foregoing, the Court recommends that:

1) the plaintiff's excessive force claim against Defendants Joey Rush and Charles Bandy and the plaintiff's failure to protect claims against Defendants Alexander Williams and Charles Bandy be SET FOR TRIAL; and

2) all other claims in this action be DISMISSED WITH PREJUDICE because there are no facts upon which a reasonable jury could find in favor of the plaintiff on these claims and that Defendants Kimberly Cherry, Jeremy Wilkerson, Charles Tarlecky, Lance Hampton, and Sonya Troutt be DISMISSED from the action.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of  this Report and Recommendation to which objection is made.  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


Respectfully submitted,


JULIET  GRIFFIN
United States Magistrate Judge