**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ANTONIO FREEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:10-cv-0697** |
| | ) | **Judge Trauger** |
| **SONYA TROUTT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM**

Pending before the court is the Magistrate Judge's June 29, 2012 Report and

Recommendation ("R&R") (Docket No. 242), which, among other things, recommended

dismissal of several of the plaintiff's claims. The plaintiff, Antonio Freeman, has filed

objections to the R&R (Docket No. 257), to which defendants Sonya Troutt, Chris Tarlecky, and

Lance Hampton have responded (Docket No. 259).

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      Introduction and Procedural History**

This suit arises out of an altercation at the Sumner County Jail ("the jail"). The plaintiff,

currently incarcerated within the Tennessee Department of Corrections, alleges that on July 8,

2010, he along with two others, Gordon Storke and Recco Van, were attacked by a group of

white inmates and suffered injuries.[1]   (Docket No. 1, at 2-3, 5.)  He commenced this action on

---

[1] As the R&R notes, while Storke and Van were plaintiffs to this action when it was filed
on July 21, 2010, they were dismissed during pre-trial proceedings due to their failure to comply

1

July 21, 2010 asserting claims for federal civil rights violations under 42 U.S.C. § 1983 and state law negligence.  (*Id.* at 6.)

As noted in the R&R, the plaintiff brought claims against Bob Barker, the former Sumner County Sheriff, and Sonya Troutt, the current Jail Administrator, arising from the injuries he sustained during the July 8, 2010 incident.  (Docket No. 242 at 2.)  Specifically, the plaintiff alleges that, during the attack, he was hit with a broomstick and several items were dropped on his head.  (*Id.*)  While the Complaint did not clearly articulate specific claims, the Magistrate Judge noted that, among other things, the plaintiff alleged that security measures at the jail were inadequate, as convicted felons and state prisoners were housed with other inmates, and dangerous inmates were allowed to remain in the general population.  In addition, the plaintiff alleged that he was improperly placed in administrative segregation following the July 8, 2010 fight.  (*Id.*)

The R&R also recounted that, on October 5, 2010, the plaintiff filed an Amended Complaint, in which he clarified that his suit was brought pursuant to 42 U.S.C. § 1983 seeking monetary damages, as well as declaratory and injunctive relief.  (Docket No. 242 at 3.)  The Amended Complaint also added seven jail officials as defendants.  (*Id.*)  These individuals included Charles Bandy, Alexander Williams, Jeremy Wilkerson, Joey Rush, Kimberly Cherry, Chris Tarlecky, and Lance Hampton.  (*Id.*)  With respect to defendants Bandy and Williams, the plaintiff alleged that they failed to protect him during the July 8, 2010 fight.  (*Id.*) Bandy and defendant Rush are also alleged to have used excessive force during a subsequent search of the

with the court's orders and for want of prosecution.  (Docket No. 242 at 2.)

plaintiff's administrative segregation cell. (*Id.* at 3-4.) As to defendants Tarlecky and Hampton, the plaintiff alleged, among other things, that they falsely arrested him on an aggravated assault charge that was subsequently dismissed by the state prosecutor. (*Id.* at 3.) The plaintiff also made additional allegations concerning defendant Troutt. (*Id.* at 4.) Specifically, he alleged that Troutt treated him unfairly, singled him out for reprisal, kept him in segregation without just cause, and permitted various infringements to his constitutional rights.[2] (*Id.* at 4.)

After the defendants filed a document entitled "Suggestion of Death of Sheriff Bob Barker" on March 17, 2011, the court substituted Sonny Weatherford, the current Sumner County Sheriff, as a defendant to this suit with respect to the official capacity claims asserted against Barker. (Docket No. 78 at 1.) On April 27, 2011, the court dismissed the plaintiff's individual capacity claims brought against Barker (Docket No. 104), and on September 16, 2011, it dismissed the official capacity claims asserted against Weatherford (Docket No. 131). On June 13, 2012, the Magistrate Judge held an evidentiary hearing regarding the plaintiff's remaining claims.

## II.    The Magistrate Judge's Findings of Fact

The plaintiff, proceeding *pro se*, offered testimony at the evidentiary hearing regarding the events underlying his claims. Jonathan Morris, an inmate at the jail, also testified on behalf of the plaintiff. These were the only two individuals who testified at the hearing. Based on their

---

[2] On December 20, 2010, the plaintiff was granted leave to amend his Complaint a second time to assert a claim for mental anguish arising out of the defendants' alleged failure to properly treat the plaintiff for potential exposure to Hepatitis C following the July 8, 2010 fight. (*See* Docket No. 56 at 1-2; Docket No. 59 at 1-2.)

testimony, the Magistrate Judge made the following findings of fact relevant to the issues underlying the plaintiff's objections to the R&R.[3]

On July 8, 2010, the plaintiff was housed in a general population unit at the jail with approximately 40 other inmates. These inmates included both pre-trial detainees and individuals who had already been convicted of misdemeanors or felony offenses. That day, an altercation took place in the common area of the housing unit between Gordon Storke and Michael Hutson. Both inmates were part of a larger group playing cards and, according to the plaintiff, betting a number of commissary items. The altercation escalated into a violent fight that not only involved Storke and Hutson, but also pulled in Recco Van, the plaintiff, and other inmates.

The plaintiff testified that he was not an aggressor, but was nonetheless required to fight in order to protect himself and Storke from Hutson and his associates. The plaintiff asserted that the alleged aggressors used homemade weapons against himself, Storke, and Van during the fight. The plaintiff was hit with a broomstick during the fight. He was also struck in the head and neck by a box containing his legal materials and commissary items, which was dropped by Hutson from the plaintiff's cell on the second tier. The Magistrate Judge did not find any evidence showing that the plaintiff sustained serious injuries as a result of the altercation.

The fight lasted for approximately 15-17 minutes. The plaintiff testified that the alleged aggressors were all white, while Van and himself were both black. As for Storke, the Magistrate Judge found that the testimony did not clearly establish his race.

---

[3] The following summary of the Magistrate Judge's findings of fact is drawn from the June 29, 2012 R&R. (*See* Docket No. 242 at 5-9.)

Morris' recollection of the July 8, 2010 fight was, in substantial part, consistent with the plaintiff's testimony. However, unlike the plaintiff, Morris testified that the fight was between two groups of inmates consisting of roughly the same number of people. Morris was an inmate in the same housing unit as the plaintiff on the date of the altercation and had witnessed the fight while staying close to his cell.

While the plaintiff testified that Hutson had attempted to intimidate other inmates and jail officers, he did not state that there was any animosity between himself and Hutson or, for that matter, between himself and the other inmates who attacked him during the fight. The Magistrate Judge found no evidence showing that the plaintiff, or any other inmate, had requested protection from other inmates in their general population unit or had otherwise made jail officials aware of a risk of violence posed by such individuals. The Magistrate Judge also found that, while the plaintiff testified that the same inmates who attacked him had also attacked other inmates in the housing unit earlier in the day, he failed to provide any details concerning those earlier attacks and testified that he did not report those attacks to any jail officials.

Immediately following the fight, the plaintiff was seen by the jail's medical staff. After receiving treatment for his wounds, he was not returned to the general housing unit, but was instead taken to a segregation cell, wherein he was unable to shower during the first 48 hours he was there. The plaintiff remained in segregation until October 13, 2010.

On July 9, 2010, the plaintiff's segregation cell was searched three times and the plaintiff was required to submit to a urinalysis. One of the searches was conducted by defendants Bandy and Rush. While conducting this search, Rush found contraband consisting of pills inside a

package of ramen noodles belonging to the plaintiff. Believing that he was being "set up," the plaintiff testified that he knocked the package out of Rush's hands and walked out of the cell. Rush then grabbed the plaintiff's shirt and tripped his legs, causing him to fall to the ground. While on the ground, the plaintiff, who was handcuffed at the time, testified that Rush "clawed" at the plaintiff's arms with his fingernails ripping away skin and also sprayed a chemical into the plaintiff's eyes and mouth. He also testified that Bandy twisted his hands and wrists while Rush pinned him down on the ground. This attack continued until another officer arrived at the cell and took the plaintiff away.

The plaintiff was subsequently charged with aggravated assault and possession of contraband in a penal facility. He testified that defendants Tarlecky and Hampton improperly conducted the investigation that led to these charges. The plaintiff contended that there was no probable cause for the aggravated assault charge, as demonstrated by the fact that the charge was dismissed or withdrawn by the state prosecutor at a court hearing in September of 2010. The plaintiff stated that this determination was made after the prosecutor reviewed footage of the July 8, 2010 altercation from a security tape and concluded that the plaintiff was not the aggressor in that fight, but was instead a victim. The plaintiff was, however, convicted of contraband possession and is currently serving a sentence on that charge within the Tennessee Department of Corrections.

III.    **The Magistrate Judge's Recommendations**

Upon reviewing the evidence presented at the hearing, the Magistrate Judge issued her recommendations. In the R&R, the Magistrate Judge recommended that the plaintiff's excessive

force claim against defendants Bandy and Rush and his failure to protect claim against Bandy and defendant Williams proceed to trial. (Docket No. 242 at 11, 14, 21.) She also recommended that the plaintiff's claims against defendants Cherry, Wilkerson, Tarlecky, Hampton, and Troutt be dismissed with prejudice because there were no facts upon which a reasonable jury could find for the plaintiff as to any of those claims. (*Id.* at 22.)

With respect to the false arrest claim asserted against Tarlecky and Hampton premised on the aggravated assault charge, the Magistrate Judge concluded that dismissal was warranted for several reasons. (Docket No. 242 at 17.) She found that the plaintiff lacked a factual basis to assert a false arrest claim against Tarlecky because only Hampton signed a sworn Affidavit of Complaint as to this charge. (*Id.*) The Magistrate Judge also concluded that the plaintiff's false arrest claim failed as a matter of law because: (1) the plaintiff suffered no deprivation of liberty, since he was already jailed on other charges at the time the assault charge was brought against him; and (2) there was probable cause for the possession of contraband charge accompanying the aggravated assault charge. (*Id.* at 17-18.)

As for the claims against defendant Troutt, the Magistrate Judge found no basis upon which to hold Troutt personally liable to the plaintiff for his due process claim relating to his placement in administrative segregation. (Docket No. 242 at 18-19.) Specifically, the Magistrate Judge noted that the plaintiff unsuccessfully raised this claim against Troutt in a separate case, in which she found that the plaintiff's placement in administrative segregation failed to support a constitutional claim. (*Id.*); *see also Freeman v. Gay*, Case No. 3:11-cv-0867, 2012 WL 2061557, at *19 (M.D. Tenn. June 7, 2012) (Report & Recommendation), *adopted* 2012 WL 4510670, at *3 (M.D. Tenn. Sept. 28, 2012). She thus concluded that, because the

plaintiff's administrative segregation claim against Troutt had been reviewed in another action currently pending in this court, that claim should be dismissed in the instant case. (Docket No. 242 at 19.) The Magistrate Judge also concluded that the plaintiff's official capacity claims against Troutt could not proceed under the law of the case doctrine. (*Id.* at 20.) Relying on a previous R&R from this case, concluding that the plaintiff's official capacity claims against Sheriff Weatherford lacked any factual allegations supporting a municipal liability claim, the Magistrate Judge found no exceptional circumstances precluding dismissal of the official capacity claims brought against Troutt. (*Id.*)

Following the issuance of the R&R, the court granted the plaintiff's Motion for Appointment of Counsel (Docket No. 212). (Docket No. 245.) On July 25, 2012, Kyle Mothershead was appointed to represent the plaintiff in this case. (Docket No. 250.) Thereafter, the plaintiff filed specific objections to the June 29, 2012 R&R on August 17, 2012. (Docket No. 257.)

## ANALYSIS

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the Report and Recommendation to which a party specifically objects. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); *see also United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).

The plaintiff objects to the Magistrate Judge's recommendation that the following claims be dismissed: (1) the failure to protect and due process claims against defendant Troutt in her official and individual capacities; and (2) the malicious prosecution claim against defendants

Tarlecky and Hampton. (Docket No. 257 at 1.) In raising this second objection, the plaintiff posits that, while his claim against Tarlecky and Hampton was labeled as one for false arrest, in substance it more accurately resembles a malicious prosecution claim. (*Id.* at 9.) The court will address each of these specific objections in turn.

## I.     Failure to Protect

The crux of the plaintiff's objection as to this claim is that he has adduced sufficient evidence demonstrating that defendant Troutt, in her official capacity, implemented a *de facto* policy or custom of mingling inmates charged with violent felony offenses together with those charged with non-violent misdemeanors in the general housing unit of the jail and that, through this alleged policy or custom, she failed to protect the plaintiff from inmate violence. (Docket No. 257 at 3.) The plaintiff also contends that Troutt is personally liable for her failure to protect his safety.

### A.     Official Capacity Claim

By suing defendant Troutt in her official capacity, the plaintiff has essentially brought suit against Sumner County, the entity of which she is an officer. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). In order to establish municipal liability under 42 U.S.C. § 1983, the plaintiff must show that: (1) his injury resulted from a constitutional violation; and (2) the county was responsible for that violation. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009).

As noted previously, the Magistrate Judge applied the law of the case doctrine to dispose of the plaintiff's failure to protect claim asserted against Troutt in her official capacity. In doing so, the Magistrate Judge relied on a prior R&R that recommended granting Sheriff Weatherford's motion to dismiss the plaintiff's official capacity claims brought against him. That R&R was subsequently adopted by this court without objection. (Docket No. 131.) Nonetheless, the prior holding on Sheriff Weatherford's motion to dismiss does not establish the law of the case here, as the plaintiff's pleadings have been supplemented by discovery and an evidentiary hearing. *See McKenzie v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000) (noting that a prior "holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery"). Because the law of the case doctrine is inapplicable here, the court will review whether the plaintiff has presented sufficient evidence to create a genuine dispute of material fact regarding his failure to protect claim asserted against Troutt in her official capacity.[4]

---

[4] In the R&R, the Magistrate Judge analyzed the evidence presented by the plaintiff at the evidentiary hearing through the prism of a Rule 56 summary judgment standard to determine whether there were any triable issues of fact to be resolved by the jury. (*See* Docket No. 242 at 11, 14.) In conducting its *de novo* review of those portions of the R&R to which the plaintiff has specifically objected, the court shall also apply the governing Rule 56 standard in evaluating the plaintiff's claims. *See Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (outlining the applicable standard for reviewing motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56).

It is well settled that prison officials have a duty under the Eighth Amendment to take reasonable measures to ensure the safety of inmates from other inmates.[5] *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Nonetheless, prison officials will not be found liable for every injury suffered by one inmate at the hands of another. *Id.* at 834. Indeed, to find a prison official liable for a failure to protect under the Eighth Amendment, two requirements must be met. *Id.* First, the plaintiff must demonstrate that his mistreatment was objectively "sufficiently serious." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 834). Specifically, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 833. Second, the plaintiff must establish that the prison official acted with deliberate indifference to the inmate's safety. *Id.* To act with deliberate indifference, the official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

---

[5] While the plaintiff alleges that his Eighth Amendment constitutional rights were violated as a result of Sumner County's failure to protect him, the court will presume, for the purposes of this Memorandum Opinion, that the plaintiff intended to bring claims under the Fourteenth Amendment for violations of his rights as a pretrial detainee. Most failure to protect claims generally arise under the Eighth Amendment rather than the Fourteenth Amendment. *Thompson v. Hall*, No. 3:11-cv-1232, 2012 WL 124113, at *2 (M.D. Tenn. Jan. 17, 2012). While the plaintiff, as a pretrial detainee, was not protected by the Eighth Amendment, "the [E]ighth [A]mendment rights of prisoners are analogized to those of detainees under the [F]ourteenth [A]mendment to avoid the anomaly of extending greater constitutional protection to a [convicted prisoner] than to one awaiting trial." *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

As to the objective prong of the two-part *Farmer* test, the plaintiff asserts in his objections to the R&R that he faced a substantial risk of serious harm because he was housed in the general population unit with inmates charged with violent felony offenses. (Docket No. 257 at 5-6.) The plaintiff, however, has not offered a factual basis to demonstrate that he faced a substantial risk of serious harm from such inmates. While the plaintiff testified that inmate Hutson (one of the assailants) tried to intimidate other inmates and officers at the jail, the Magistrate Judge found no evidence of any animosity between the plaintiff and Hutson or between the plaintiff and any of the other inmates who attacked him during the fight. Indeed, the plaintiff himself testified that he was not scared of Hutson. (Docket No. 239 at 18.) The Magistrate Judge also found no evidence that the plaintiff requested protection from any inmate housed in the general population unit or had otherwise complained about any risk of violence presented by any such inmate. Although the plaintiff testified that the inmates who attacked him had been participants in three other fights earlier that day, the Magistrate Judge found that the plaintiff failed to provide specific details concerning those earlier incidents and, in any event, failed to report those incidents to any jail officials.

However, even if the court were to assume that the plaintiff met the objective prong of the *Farmer* test, he has nonetheless failed to adduce any evidence creating a genuine dispute of material fact as to whether any jail officials exhibited a deliberate indifference to his safety. Indeed, the plaintiff fails to address this second prong of the *Farmer* test in his objections to the R&R. Aside from pointing to the fact that he was housed in the general population unit of the jail with inmates charged with violent felony offenses, the plaintiff has presented no evidence showing that jail officials knew of and disregarded an excessive risk to his safety. With respect

to inmate Hutson, the plaintiff failed to offer any evidence showing that Hutson was generally known to be an aggressor who posed a risk to a large class of inmates at the jail. *C.f. Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (noting that deliberate indifference can be demonstrated where it is known to a prison official that "a specific individual poses a risk to a large class of inmates . . . even where the particular prisoner at risk is not known in advance"). Also absent from the plaintiff's argument is evidence that jail officials were aware prior to the July 8, 2010 altercation that the alleged assailants had engaged in any prior instances of violent conduct against other inmates. Again, while the plaintiff testified that his assailants had also participated in three other fights earlier that day, he failed to offer specific details of those incidents, admitted that he did not report those incidents to jail officials, and has otherwise failed to present any evidence showing that jail officials were aware of those incidents prior to the altercation in which he was injured. In sum, the plaintiff has failed to offer evidence showing that jail officials were aware of any facts from which it could be inferred that the plaintiff faced a substantial risk of serious harm. *See Farmer*, 511 U.S. at 837.

Because the plaintiff has failed to adduce evidence sufficient to show that the harm to him was caused by a constitutional violation, the plaintiff cannot succeed on his official capacity claim brought against defendant Troutt under 42 U.S.C. § 1983. *See Spears*, 589 F.3d at 256.

### B. Personal Capacity Claim

The plaintiff contends that the Magistrate Judge erred in dismissing his personal capacity claim against Troutt because she, by virtue of her position as Jail Administrator, must have been aware of the alleged *de facto* policy of mingling inmates charged with violent felonies together with others facing non-violent misdemeanor charges. (Docket No. 257 at 7.) This contention is

without merit.  In order to show that Troutt should be held personally liable, the plaintiff must present evidence demonstrating that she exhibited a deliberate indifference to the plaintiff's safety.  *See Farmer*, 511 U.S. at 833.  However, in recommending dismissal of the plaintiff's individual capacity claim against Troutt, the Magistrate Judge essentially found that the plaintiff provided no testimony concerning Troutt's involvement or awareness of any facts surrounding the July 8, 2010 altercation.  (Docket No. 242 at 18.)  In other words, the plaintiff failed to show that Troutt was aware of any facts from which she could infer that the plaintiff faced a substantial risk of serious harm.  *See Farmer*, 511 U.S. at 837.  Thus, the Magistrate Judge rightly determined that the plaintiff's personal capacity claim against Troutt should be dismissed.

## II.    Due Process Claim

The plaintiff's objection to the Magistrate Judge's decision to dismiss his personal capacity due process claim against Troutt arising from his confinement in administrative segregation is similarly without merit.  The plaintiff primarily takes issue with the Magistrate Judge's finding that, because the plaintiff had unsuccessfully raised the same due process claim against Troutt in another action filed in this court, *see Freeman v. Gay*, Case No. 3:11-cv-0867, 2012 WL 2061557, at *19 (M.D. Tenn. June 7, 2012) (Report & Recommendation), *adopted* 2012 WL 4510670, at *3 (M.D. Tenn. Sept. 28, 2012), the due process claim in this action should be dismissed, notwithstanding the fact that it was filed first.[6]  (Docket No. 242 at 19.)

_____

[6] In reaching this conclusion, the Magistrate Judge relied on *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977), wherein the Third Circuit held that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant."  The Magistrate Judge observed that while generally, "the later filed claim or action would be subject to dismissal . . ., the plaintiff's administrative segregation claim was reviewed on the merits in the most recently filed of the plaintiff's two

The plaintiff contends that the Magistrate Judge's reliance on *Gay*, wherein the plaintiff's due process claim against Troutt was disposed of upon a motion to dismiss, is improper here because additional evidence regarding that claim was introduced at an evidentiary hearing. (Docket No. 257 at 8.) However, even if the court were to assume that the Magistrate Judge improperly relied on *Gay* in dismissing the plaintiff's due process claim, that claim would nonetheless fail because the plaintiff has not presented any evidence from which a jury could reasonably conclude that his confinement in administrative segregation burdened a cognizable liberty interest.

Under the due process clause, an inmate possesses a liberty interest "with respect to state-imposed prison discipline that rises to the level of an 'atypical and significant hardship on the inmate.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[T]he discipline must be unusual and substantial 'in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484.) Courts should consider both the nature of the plaintiff's more-restrictive confinement and its duration in determining whether it imposes an "atypical and significant hardship." *Rutter*, 524 F.3d at 792-93.

At the evidentiary hearing, the plaintiff testified that he was placed in administrative segregation for a total of either 97 or 98 days, wherein he was unable to shower for the first 48-hours he was there, was denied medical care, and lost 23 pounds. (Docket No. 239 at 36, 56.) As to the denial of medical care, the plaintiff provided no details concerning the circumstances surrounding any such deprivation. Nor did he testify that he suffered any injuries due to any

---

actions." (Docket No. 242 at 19, n.7.) Therefore, the Magistrate Judge recommended that "it is appropriate to dismiss the claim in the instant action even though it was filed first." (*Id.*)

failure to receive medical care while in administrative segregation. The plaintiff similarly offered no details concerning his weight loss. Namely, he failed to identify any specific cause for that loss, whether it be a reduction in the number or size of meals served or some other event. The plaintiff has also failed to offer any evidence comparing his administrative confinement "'to the ordinary incidents of prison life.'" *Rutter*, 524 F.3d at 792 (quoting *Sandin*, 515 U.S. at 484.) Thus, given these circumstances, the court finds that the plaintiff has failed to create a genuine dispute of material fact as to whether his 97 or 98-day segregation imposed an "atypical and significant hardship." *See Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (holding that a 117-day delay in returning an inmate, who had previously served approximately 8 months in administrative segregation, to the general population after prison officials already approved his transfer did not impose an "atypical or significant hardship on him"); *see also Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999) (holding that a 101-day administrative confinement does not constitute an "atypical and significant hardship on the inmate"); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (holding that six months confinement in administrative segregation under disgusting conditions that included, among other things, cells infested with vermin that were smeared with human feces and urine, did not impose "a significant hardship in relation to the ordinary incidents of prison life").[7]

---

[7] The plaintiff also objects to the Magistrate Judge's denial of his official capacity due process claim against Troutt. (Docket No. 257 at 8.) As previously noted, the Magistrate Judge dismissed all official capacity claims against Troutt under the law of the case doctrine. (Docket No. 242 at 20-21.) Notwithstanding the court's prior conclusion that the law of the case doctrine is inapplicable here, it nonetheless finds that the plaintiff's official capacity claim against Troutt fails for the same reason that his personal capacity claim cannot proceed - that is, he has not adduced evidence from which a jury could reasonably conclude that his confinement in administrative segregation burdened a cognizable liberty interest. Thus, because the plaintiff has

### III.  Malicious Prosecution

Finally, the plaintiff objects to the R&R because the Magistrate Judge failed to examine the substance of the plaintiff's 42 U.S.C. § 1983 claim for false arrest against defendants Tarlecky and Hampton.  (Docket No. 257 at 9.)  Citing *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001), the plaintiff specifically argues that his false arrest claim is properly characterized as one for malicious prosecution under 42 U.S.C. § 1983, because the substance of the claim alleges that a charge lacking probable cause led to the initiation of state court criminal proceedings against the plaintiff.  (*Id.*)  Having reviewed the plaintiff's pleadings, the court agrees and will analyze the plaintiff's claim accordingly.[8]

"The Sixth Circuit recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration."  *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (internal quotation marks and citations omitted).  In order to establish a malicious prosecution claim premised on a Fourth Amendment violation under § 1983, the plaintiff must prove that: (1) "a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute;" (2) "there was a lack of

---

failed to show that his harm was caused by a constitutional violation, his official capacity claim must fail.  *See Spears*, 589 F.3d at 256.

[8] The plaintiff also contends, without explanation, that his federal false arrest claim can be properly characterized as a malicious prosecution claim brought under Tennessee law. However, as the Magistrate Judge noted in the R&R, the plaintiff made clear in his first Amended Complaint that his action was brought under 42 U.S.C. § 1983 for the redress of his federal constitutional rights.  (Docket No. 242 at 3.)  Thus, the court finds unavailing the plaintiff's attempt to characterize his federal malicious prosecution claim as one also arising under state law.

probable cause for the criminal prosecution;" (3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial seizure"; and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." *Id.* at 308-09 (internal quotation marks and citations omitted). The plaintiff contends that his federal malicious prosecution claim should proceed to trial because he has presented evidence creating triable issues as to each of the aforementioned elements. (Docket No. 257 at 10-13.) However, as the defendants note in their response to the plaintiff's objections to the R&R, the plaintiff has failed to present any evidence showing that he suffered a deprivation of liberty due to the prosecution of the aggravated assault charge.

Although the Magistrate Judge treated the plaintiff's federal malicious prosecution claim as one for false arrest, she nonetheless cited decisions in her R&R holding that there is no deprivation to a plaintiff's liberty interest when, at the time of his arrest and prosecution, he is already in custody on other charges. (*See* Docket No. 242 at 17-18) (citing *Doe v. Selsky*, 841 F.Supp.2d 730, 732 (W.D.N.Y. 2012); *Leinart v. Bundy*, No. 3:09-cv-9, 2011 WL 4452186, at *7 (D.Conn. Sept. 26, 2011); *Dillhunt v. Theriault*, No. 09-CV-0412, 2009 WL 4985477, at *16 (N.D.N.Y. Dec. 15, 2009); *Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, at *13-*14 (S.D.N.Y. Mar. 31, 2006)). In his objections to the R&R, the plaintiff does not directly take issue with the holdings of these decisions, but nonetheless asserts that, under federal law, a plaintiff can show a deprivation of liberty when he is charged with multiple criminal offenses, and at least one of them lacks the requisite probable cause. (Docket No. 257 at 11.) To support this assertion, the plaintiff relies on *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682-83 (7th Cir. 2007).

In *Holmes*, the Seventh Circuit, citing decisions from other circuit courts of appeals, noted that, unlike a false arrest claim, having probable cause to charge an individual with one criminal offense does not, by itself, foreclose a malicious prosecution claim for additionally prosecuting that same person on a separate charge for which probable cause was lacking. 511 F.3d at 682. In explaining the reason for this distinction, the Seventh Circuit stated:

> An arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is *a* reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed. But when it comes to prosecution, the number and nature of the charges matters: the accused must investigate and prepare a defense to each charge, and as the list of charges lengthens (along with the sentence to which the accused is exposed), the cost and psychic toll of the prosecution on the accused increase. At the same time, when an officer prepares and signs a criminal complaint, he typically will have more of an opportunity to reflect on the nature and ramifications of the accused's conduct than he did in making the arrest. It is reasonable to demand that each charge that a police officer elects to lodge against the accused be supported by probable cause. Otherwise, police officers would be free to tack a variety of baseless charges on to one valid charge with no risk of being held accountable for their excess.

*Id.* at 682-83 (internal citations omitted). However, as this passage plainly indicates, the distinction set forth in *Holmes* served to explain why a police officer's probable cause as to one charge lodged against a plaintiff could not, by itself, defeat that plaintiff's claim for malicious prosecution as to other charges for which probable cause was lacking. Contrary to the plaintiff's suggestions otherwise, the quoted language from *Holmes* does not state that a person prosecuted as a result of the filing of supported and baseless charges has, by virtue of that fact alone, suffered a deprivation of liberty sufficient to support a federal malicious prosecution claim. Indeed, *Holmes* does not address the types of deprivations of liberty that would support an

individual's Fourth Amendment malicious prosecution claim, as it involved a claim arising under state law.  Therefore, the court finds the plaintiff's reliance on *Holmes* to show that he suffered a deprivation of liberty resulting from the prosecution of the aggravated assault charge unpersuasive.

The plaintiff also contends that the prosecution of the aggravated assault charge deprived him of a liberty interest because it added to the bond that he was required to pay in order to obtain his release from the jail.  (Docket No. 257 at 12.)  He adds that, while the aggravated assault charge was dismissed by the state prosecutor, the corresponding bond remained.  (*Id.*)  However, the plaintiff fails to explain precisely how this bond substantially burdened his liberty.  For instance, he does not provide any evidence indicating that, but for the imposition of this bond, he would have been able to secure his release from the jail.  Indeed, the plaintiff does not dispute that, at the time the aggravated assault charge was brought, he was already confined pursuant to other charges, each presumably possessing its own respective bond which he apparently could not make.

In sum, because the plaintiff has failed to create a genuine dispute of material fact as to whether he suffered a deprivation of liberty as a result of the prosecution of the aggravated assault charge, his federal malicious prosecution claim against defendants Tarlecky and Hampton cannot proceed.

## <u>CONCLUSION</u>

In light of the foregoing, the Magistrate Judge's June 29, 2012 Report and Recommendation will be **ACCEPTED**, as modified herein, and the plaintiff's claims against defendants Cherry, Wilkerson, Tarlecky, Hampton, and Troutt will be **DISMISSED**. The plaintiff's excessive force claim against defendants Bandy and Rush and his failure to protect claim against Bandy and defendant Williams will proceed to trial. This case will be referred back to the Magistrate Judge for further proceedings consistent with the referral Order.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge